David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email:  dbower@monteverdelaw.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HERCULES HURTADO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INVUITY, INC., GREGORY T. LUCIER, SCOTT FLORA, WILLIAM W. BURKE, RANDALL A. LIPPS, ERIC ROBERTS, and DANIEL WOLTERMAN,<br><br>Defendants. | Civil Action No. 18-cv-5920<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934** |

Hercules Hurtado ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Invuity, Inc. ("Invuity" or the "Company") against Invuity and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Invuity, the "Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

1. §§ 78n(e) and 78t(a) in connection with the tender offer ("Tender Offer") by Stryker Corporation, through its subsidiary (collectively "Stryker"), to acquire all of the issued and outstanding shares of Invuity (the "Proposed Transaction").

2. On September 10, 2018, Invuity entered into a definitive agreement and plan of merger (the "Merger Agreement"), whereby shareholders of Invuity common stock will receive $7.40 in exchange for each share of Invuity stock they own (the "Offer Price").

3. On September 24, 2018, in order to convince Invuity shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC"). In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the background of the Proposed Transaction, including conflicts of interest face by Invuity management; (ii) the valuation analyses performed by the Company's financial advisor, Moelis & Company LLC ("Moelis"); (iii) conflicts of interest faced by Moelis.

4. The Tender Offer is scheduled to expire at 12:00 midnight Eastern Time at the end of the day on October 22, 2018 (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the forthcoming Expiration Date so they can properly determine whether to tender their shares.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Invuity shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Invuity maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

9. Plaintiff is, and at all relevant times has been, a shareholder of Invuity.

10. Defendant Invuity is a Delaware corporation and maintains its principal executive office at 444 De Haro Street, San Francisco, CA 94107. Invuity is a medical technology company focused on developing and marketing advanced surgical devices to improve the surgeon's ability to perform minimal access surgery through smaller and hidden incisions. The Company's common stock trades on the NASDAQ under the ticker symbol "IVTY".

11. Individual Defendant Gregory T. Lucier is a director of Invuity and is the Chairman of the Board.

12. Individual Defendant Scott Flora is a director of Invuity and is the President and Chief Executive Officer of the Company.

13. Individual Defendant William W. Burke is, and has been at all relevant times, a director of the Company.

14. Individual Defendant Randall A. Lipps is, and has been at all relevant times, a director of the Company.

15. Individual Defendant Eric Roberts is, and has been at all relevant times, a director

1  of the Company.

2  16.     Individual Defendant Daniel Wolterman, and has been at all relevant times, a
3  director of the Company.

4  17.     The defendants identified in paragraphs 10-16 are collectively referred to as the
5  "Defendants".

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Invuity (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

19.     This action is properly maintainable as a class action because:

    a.     The Class is so numerous that joinder of all members is impracticable. As of the close of business on September 17, 2018, there were 24,085,279 shares issued and outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public shareholders of Invuity will be ascertained through discovery;

    b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

        i)   whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Recommendation Statement, in violation of Sections 14(e) of the Exchange Act;

        ii)  whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

        iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement.

   c.   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

   d.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

   e.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

   f.   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

   g.   A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## **SUBSTANTIVE ALLEGATIONS**

**I.   Background and the Proposed Transaction**

20.   Invuity, formerly Spotlight Surgical, Inc., incorporated on May 29, 2015, is a commercial-stage medical technology company. The Company provides surgeons with direct visualization of surgical cavities during minimally invasive and minimal access surgical procedures. The Company integrates its Intelligent Photonics technology platform into its single-use and reusable surgical devices to address some of the intracavity illumination and visualization challenges. The Company utilizes its technology to develop optical waveguides that direct and shape thermally cool, brilliant light into broad, uniform, and volumetric illumination of the surgical target. It sells its devices to approximately 530 hospitals.

21.   Stryker, incorporated on February 20, 1946, is a medical technology company. The Company offers a range of medical technologies, including orthopedic, medical and surgical, and neurotechnology and spine products. The Company's segments include Orthopaedics; MedSurg; Neurotechnology and Spine; and Corporate and Other. The Orthopaedics segment includes

reconstructive (hip and knee) and trauma implant systems and other related products. The Company's MedSurg segment consists of instruments, endoscopy, medical, and sustainability products. The Neurotechnology and Spine segment includes neurovascular products, spinal implant systems, and other related products.

22. On September 11, 2018, Invuity issued a press release announcing the Proposed Transaction. The press release stated in relevant part:

**Invuity Announces Definitive Agreement to Be Acquired by Stryker Corporation for $7.40 per Share in Cash**

San Francisco, CA, September 11, 2018 — Invuity, Inc. (NASDAQ: IVTY), a leading medical technology company focused on advanced surgical devices to enable better visualization, today announced it has entered into a definitive agreement with Stryker Corporation (NYSE:SYK), pursuant to which Stryker will acquire all of the outstanding shares of Invuity for $7.40 per share in cash, implying a total equity value of approximately $190 million.

"The combination of Stryker's established leadership in minimal access surgery paired with Invuity's suite of enabling visualization and surgical devices should facilitate better patient outcomes and operating room efficiencies in women's health, general surgery, electrophysiology and orthopedics," said Scott Flora, Invuity's Interim Chief Executive Officer. "It is with this in mind that Invuity's Board of Directors voted to recommend this transaction to Invuity's shareholders."

"Invuity's innovative products in the single-use lighted instrumentation and hybrid energy markets provide best in class illumination and help make surgery safer," stated Spencer S. Stiles, Group President, Neurotechnology, Instruments and Spine. "I look forward to the work we will do together to advance Stryker's mission of making healthcare better."

Under the terms of the definitive transaction agreement, a subsidiary of Stryker Corporation will commence a tender offer to purchase all outstanding shares of Invuity, Inc. common stock in exchange for $7.40 per share in cash. The completion of the tender offer is subject to customary terms and closing conditions, including a requirement that a majority of Invuity, Inc.'s outstanding shares are tendered in the offer and receipt of certain regulatory approvals. The agreement provides that immediately following the successful completion of the tender offer, the subsidiary of Stryker Corporation making the offer will merge with and into Invuity, Inc. and all remaining outstanding shares of Invuity, Inc. common stock that were not tendered in the offer will receive the same consideration paid in respect of those shares that were tendered. Stryker Corporation intends to fund the transaction with cash on hand.

The Invuity, Inc. Board of Directors has approved entering into the agreement and recommends that Invuity, Inc.'s shareholders tender their shares in the upcoming tender offer. All directors and executive officers of Invuity, Inc. have entered into a tender and support agreement providing that they will tender their shares in the offer.

>Following the completion of the transaction, Invuity, Inc. shares will be delisted from NASDAQ. The tender offer is expected to be completed in the fourth quarter of 2018, subject to the satisfaction or waiver of the transaction conditions.
>
>In connection with this transaction, Moelis & Company LLC is acting as financial advisor and Wilson Sonsini Goodrich & Rosati P.C. is acting as legal advisor to Invuity, Inc.

23. The Offer Price is inadequate consideration for Invuity shareholders. Indeed, $7.40 represents a 22.5% *discount* to the Company's 52-week high trading price. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Recommendation Statement, which is necessary for shareholders to properly exercise their corporate suffrage rights and make an informed decision concerning whether to tender their shares in the Proposed Transaction.

**II.    The Recommendation Statement Is Materially Incomplete and Misleading**

24. On September 24, 2018, Defendants filed the Recommendation Statement with the SEC. The Recommendation Statement has been disseminated to the Company's shareholders, and solicits the Company's shareholders to tender their shares in the Tender Offer. The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Recommendation Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e) and 20(a) of the Exchange Act.

25. First, page 11 of the Recommendation Statement discloses that five of Invuity's executive officers, Scott Flora, James Mackaness, Douglas Heigel, Hisham Shiblaq, and Steven Annen, will receive retention agreements from Stryker Instruments, a subsidiary of Stryker, but fails to provide any further information surrounding the negotiation of these agreements. Next, page 17 asserts that "[o]n July 31, 2018, Stryker executed a non-disclosure agreement containing customary standstill provisions, *including restrictions on Stryker discussing compensation arrangements with Invuity directors, officers or employees* . . . ." However, on page 22, the Recommendation Statement goes on to describe that exact activity—negotiating a retention

agreement valued at $1 million—"Mr. Flora and representatives of Stryker engaged in discussions regarding a potential retention agreement" with "Stryker inform[ing] Mr. Flora that Stryker was open to granting Mr. Flora a retention agreement valued at approximately $1 million, but that no such agreement would be entered into prior to executing the Merger Agreement . . . ." Yet, once again this information was contradicted by the information on page 23, "Stryker did, however, orally inform Mr. Flora that Stryker expected to grant him a retention agreement valued at approximately $1 million . . . ."

26. These contradictory statements are plainly misleading to Invuity shareholders. Moreover, the confusion brought about by these statements casts doubt upon Defendants' complete and accurate disclosure of this conflict of interest. Shareholders are left guessing what was bargained for in exchange for Flora—and the other officers—lucrative retention agreements. In, fact no details are given about any type of negotiations for the other retention agreements. This information is particularly important to shareholders here, where Invuity twice extended Stryker's exclusivity in the face of a competing bid whose initial proposal came in significantly higher than Stryker's initial proposal. As it stands, the disclosure included in the Recommendation Statement regarding the post-close employment of Invuity officers is materially incomplete and/or misleading.

27. Second, with respect to Moelis' *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following key components used in the analysis: (i) the inputs and assumptions underlying the calculation of the discount rate range of 13% to 15%, including values for betas, debt capitalization ratios, and size premium; and (ii) the NOLs used to adjust the unlevered free cash flows.

28. These key inputs are material to Invuity shareholders, and their omission renders the summary of Moelis' *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles explaining the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions: in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff,

*Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

29. Third, with respect to the Moelis' *Selected Publicly Traded Companies Analysis*, the Recommendation Statement fails to disclose: (i) the criteria for selecting the companies included in the analysis; (ii) the total enterprise values of the companies included in the analysis; and (iii) the reason(s) for not including previously identified competitors in the analysis. This information is important to investors, because it illustrates whether the companies were appropriately selected, or included to fit the Offer Price into a range of fairness. Without it, shareholders cannot fully evaluate the summary provided. Thus, the omission of this material information renders the summary of this analysis included in the Recommendation Statement incomplete and misleading.

30. Fourth, and finally the Recommendation Statement fails to disclose any details surrounding the prior relationships between Moelis and the Company or the members of its Board. Disclosure of "any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The [financial advisor], its affiliates, and/or unaffiliated representative; and (ii) The [Company] or its affiliates" is required pursuant to 17 C.F.R. § 229.1015(b)(4). Such information is plainly material to Invuity shareholders. It is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial

advisor's own proprietary financial interest in a transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the transaction to the shareholders, might have. This is especially true when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to them—given their overall economic interest—than only approving a deal at truly fair price to shareholders.

31. On page 16, the Recommendation Statement specifically states that the Company selected Moelis to be its financial advisor because of their prior experience working with Flora and the Board. However, the Recommendation Statement fails to disclose any details about any prior relationship between Moelis and the Company or any of its affiliates. The omission of Moelis' prior relationship to Invuity and its Board renders the statements disclosing Moelis' potential conflicts—particularly pages 33-43—provided in the Recommendation Statement and, potentially, Moelis' fairness opinion materially incomplete and misleading, and in violation of 17 C.F.R. § 229.1015(b)(4).

32. In sum, the omission and/or misstatement of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

33. Plaintiffs repeat and reallege the preceding allegations as if fully set forth herein.

34. Defendants caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

35. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order

to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

36.  Defendants violated this clause of Section 14(e) because they negligently caused or allowed the Recommendation Statement to be disseminated to Invuity shareholders in order to solicit them to tender their shares in the Tender Offer, and the Recommendation Statement contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

37.  Defendants negligently omitted the material information identified above from the Recommendation Statement or negligently failed to notice that such material information had been omitted from the Recommendation Statement, which caused certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading. As directors and officers of Invuity, the Individual Defendants had a duty to carefully review the Recommendation Statement before it was disseminated to the Company's shareholders to ensure that it did not contain untrue statements of material fact and did not omit material facts. The Individual Defendants were negligent in carrying out their duty.

38.  Invuity is imputed with the negligence of the Individual Defendants, who are each directors and/or senior officers of Invuity.

39.  As a direct result of Defendants' negligent preparation, review, and dissemination of the false and/or misleading Recommendation Statement, Plaintiffs and the Class are impeded from exercising their right to seek appraisal on a fully informed basis and are induced to tender their shares and accept the inadequate Offer Price in connection with the Proposed Transaction. The false and/or misleading Recommendation Statement used to solicit the tendering of shares

impedes Plaintiffs and the Class from making a fully informed decision regarding the Tender Offer and is an essential link in consummating the Proposed Transaction, which will deprive them of full and fair value for their Invuity shares.  At all times relevant to the dissemination of the materially false and/or misleading Recommendation Statement, Defendants were aware of and/or had access to the true facts concerning the process involved in selling Invuity, the projections for Invuity, and Invuity's true value, which is greater than the Offer Price Invuity's shareholders will recieve.  Thus, as a direct and proximate result of the dissemination of the false and/or misleading Recommendation Statement Defendants used to obtain shareholder approval of and thereby consummate the Proposed Transaction, Plaintiffs and the Class will suffer damage and actual economic losses (i.e., the difference between the price Invuity shareholders receive and the true value of their shares at the time of the Transaction) in an amount to be determined at trial.

40. The misrepresentations and omissions in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in the Tender Offer.  In addition, a reasonable investor would view a full and accurate disclosure as having significantly altered the "total mix" of information made available in the Recommendation Statement and in other information reasonably available to shareholders.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiffs repeat and reallege the preceding allegations as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Invuity within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Invuity and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiffs to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Transaction. They were thus directly involved in the making of the Recommendation Statement.

45. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiffs and the Class have suffered damage and actual economic losses (i.e., the difference between the price Invuity shareholders received and the true value of their shares at the time of the Transaction) in an amount to be determined at trial.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

C. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: September 26, 2018

Respectfully submitted,

**OF COUNSEL**

*/s/ David E. Bower*
David E. Bower

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel: 212-971-1341
Fax: 212-202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email: dbower@monteverdelaw.com

*Counsel for Plaintiff*